OTTERSON ET AL. v. HOFFORD ET AL.

1. When the record of a will, together with the affidavit at the time of probate, is offered in evidence, it is competent for the opposing party to show statements made out of court by one of the subscribing witnesses who had joined in such affidavit, in order to contradict the statements of such affidavit as to the due execution of the will.

2. Such evidence standing alone will not invalidate the instrument.

On rule to show cause why a new trial should not be granted.

Argued at November Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and SCUDDER.

For the plaintiff, *J. G. Shipman.*

For the defendant, *P. L. Voorhees* and *A. Browning.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of ejectment, both parties claiming title under the same ancestor; the plaintiff in right of his wife as heir-at-law, the defendant by force of a will.

After the plaintiff had proved the pedigree on which he relied, the defendant introduced a certified copy of the record of the will in question. Upon an inspection of this copy, it appears that there were three testamentary witnesses, all of whom had been sworn in making probate. One of these witnesses was produced at the trial by the plaintiff, and testified

to the effect that the will had not been legally executed. Another of them being called by the defendant controverted the statements of the former, and made out a legal execution of the instrument. The third subscribing witness was not called on either side.

In this condition of the case the plaintiff's counsel offered to show that the third witness, who had not been sworn, had made sundry statements inconsistent with the fact of the due execution of the will in his presence. This offer having been overruled by the court, constitutes one of the grounds on which a new trial is asked.

To fully estimate the force of the plaintiff's position, the exact situation of the parties with respect to the evidence before the court at the time of this offer, is to be kept clearly in view. The defendant was standing before the jury, in part, on the affidavit of this absent witness. That testimony, if accepted as true, proved the point in dispute, which was, whether the will had been executed according to the statute. The defendant did not call the witness, but relied on his *ex parte* affidavit, as it appeared on the record made up by the surrogate in compliance with the act. The plaintiff therefore had no opportunity to cross-examine this witness, whose testimony was so important. If he had been called by the plaintiff himself and had confirmed his affidavit, his statements inconsistent with his recorded oath, could not have been shown. The plaintiff would not have been permitted to break down his own witness. The question is, whether by the operation of the statute which directs the surrogates to record wills, " together with the proofs thereof," and which declares that certified transcripts of such records shall be received in evidence, the party against whom such transcript may be offered is deprived not only of the opportunity of cross-examination, but also of the right to show statements made by the testamentary witnesses at variance with their oaths at the time of probate.

To the extent of the legal principle involved in this inquiry, the decisions heretofore made by this court appear to

be conclusive on this point. To this class belongs the judgment in the case of *The Reformed Dutch Church* v. *Ten Eyck*, 1 *Dutcher* 40. One of the objections to the proceedings in that instance was, that the written statements of a subscribing witness to a deed, who was dead, in disparagement of the evidence afforded by his signature, had been admitted, but such objection was not allowed to prevail. " It would seem," says the opinion of Chief Justice Green, " from the necessity of the case, and as affording the best substitute for the opportunity of cross-examination, which has been lost by the death of the witness, the evidence ought to be received in support of a charge of fraud or forgery. But standing alone, unsupported by other evidence, it is entitled to but little weight, and should never be suffered to defeat the title." This point passed again under consideration in the case of *Boylan* ads. *Meeker*, 4 *Dutcher* 294, and the same view was taken with respect to it. The principle adopted is thus expressed. It is from the opinion of Chief Justice Whelpley that I quote : " Chief Justice Ewing, in the course of an elaborate judgment in Patterson *v.* Tucker, holds that the foundation of the rule permitting proof of the handwriting of the subscribing witnesses to stand as proof of the execution of the instrument in certain cases is, that the attestation of the witness is a declaration by him that the instrument was duly executed in his presence, as the attestation clause usually declares. If that be the case, I think it is quite clear whenever the attestation is offered in evidence as proof of the execution of the instrument, any evidence which would have been competent against the witness, had he been sworn, will be competent to overthrow the force of his declaration offered in evidence instead of his testimony." The case of *Losee* v. *Losee*, 2 *Hill* 609, stands on the same ground, it being there held that where the plaintiff relied on the proof of the handwriting of a deceased subscribing witness, the defendant might give evidence of his bad character for the purpose of rebutting the presumption that the instrument, to which his name was attached, had been duly executed. The doctrine

embodied in these decisions applies, *a fortiori*, to the present case. If the accident of the death of the subscribing witness will not take away the right of the opposing party to prove the bad character of such witness, or statements made by him inconsistent with the influences necessarily arising from his signature, much less will such incapacity arise from the failure of the party claiming under the instrument in dispute, to call such witness to the stand. The decisions which have denied the right to impeach, by the modes in question, the testimony of the subscribing witness, were so decided on the ground that the proof of the signature of the witness did not import an attestation on his part that the instrument had been duly executed in his presence. This was the reasoning in *Stobart* v. *Dryden*, 1 *M. & W.* 615, a case the authority of which was rejected in the determinations of this court already referred to. But even this repudiated ground of judgment is not applicable in the present instance. It was the affidavit and not mere proof of the signature of the witness, which was on this occasion before the jury, so that there is no question as to the meaning or effect of the evidence. The witness had testified, as appeared on the record, that the will had been legally executed, and the facts making out such legality had been stated by him. The defendant, instead of calling the witness, relied on this affidavit. By such a course can he deprive his adversary of all chance of showing the unreliability of such witness from his own mouth? Such an option would be greatly inexpedient, and tend to manifest unfairness. Suppose the case of a will fraudulently obtained, the witnesses being privy to the fraud. As a copy of the record of the will can be introduced, and thus the examination of the witnesses dispensed with, it seems one of the necessities of the case, in the pursuit of a just result, to admit evidence of variant statements made out of court by such witnesses, or as to their general bad character for truth. Such testimony, standing alone, would not invalidate the instrument, but, when supported by other proofs, ought to be received as a compensation for the loss of the privilege of

cross-examination, and in order to impair in some measure the effect of proof of the signature in connection with the clause of attestation. The statute, making copies of the records of wills evidence, was not designed to give to persons claiming under such instruments any undue advantage when a question was mooted as to their honest or legal execution. The intention was to make them *prima facie* evidence for the sake of convenience. But when such record is produced, the ordinary principles of evidence become applicable, one of which is, that the statements of the subscribing witness made out of court which do not coincide with his affidavit at the time of probate, or with the import of the attestation clause, may be introduced by way of contradiction.

The evidence in question I think ought to have been admitted.

The other objection to the proceedings has been examined, but appears to me so manifestly fallacious that I have not thought it necessary to discuss it.

On the ground first specified, a new trial should be granted.